# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Linda Gifford, William McConnell, and
Ryan Crescenzo on behalf of themselves and
all others similarly situated,

      Plaintiffs,

    v.

Target Corporation,

      Defendant.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 10-1194 ADM/RLE

_____

Clayton D. Halunen, Esq., Joni M. Thome, Esq., Shawn J. Wanta, Esq., Halunen & Associates, Minneapolis, MN; Charles E. Schaffer, Esq., Arnold Levin, Esq., Levin, Fishbein, Sedran & Berman, Philadelphia, PA on behalf of Plaintiffs.

Jeffrey D. Wohl, Esq., Paul, Hastings, Janofsky & Walker LLP, San Francisco, CA; Joseph G. Schmitt, Esq., Mark J. Girouard, Esq., Nilan Johnson Lewis PA, Minneapolis, MN, on behalf of Defendant.

_____

## I.  INTRODUCTION

On June 18, 2010, the undersigned United States District Judge heard oral argument on Defendant Target Corporation's ("Target") Motion to Disqualify Counsel and Dismiss [Docket No. 6] and Motion to Strike [Docket No. 45], and on Plaintiffs Linda Gifford ("Gifford"), William McConnell, and Ryan Crescenzo's (collectively "Plaintiffs") Amended Motion for Sanctions [Docket No. 54] and Motion to Strike [Docket No. 66].  Target argues Plaintiffs' counsel Halunen & Associates (the "Halunen firm") should be disqualified as counsel because it received attorney-client privileged and confidential business information from a former Target executive to be referred to in this Order as Jane Doe ("Doe"), and the use of the information has tainted this class action lawsuit.  Plaintiffs respond the Halunen firm took proper steps to ensure

privileged information was not disclosed, did not review privileged documents, and did not learn privileged information during its discussions with Doe. Plaintiffs move for Rule 11 sanctions against Target's counsel, arguing that Target's Motion to Disqualify Counsel and Dismiss lacks a legal and factual basis and was brought only to harass and intimidate. At the close of argument, the Court orally denied Plaintiffs' Motion for Rule 11 Sanctions, Plaintiffs' Motion to Strike, and Target's Motion to Strike. The Motion to Disqualify and Dismiss was taken under advisement. For the reasons set forth below, Target's Motion to Disqualify and Dismiss is granted to the extent it seeks to disqualify counsel and denied to the extent it seeks to dismiss the action.

## II. BACKGROUND

### A. The Parties

Target is a nationwide retailer operating approximately 1,700 general merchandise stores throughout the United States. Am. Compl. [Docket No. 13] ¶ 13. Plaintiffs were formerly employed as Executive Team Leaders ("ETL") at Target retail stores. Id. ¶¶ 9-11.

### B. Doe

Doe formerly worked for Target as a psychologist and senior manager. Doe Aff.[1] ¶¶ 2-3; Schmitt Reply Decl. [Docket No. 50] ¶ 4. At Target, Doe oversaw the design and implementation of corporate-wide employee development programs, worked in performance management and organizational development, and managed a Talent Assessment and Insights team (the "Talent Assessment Team") that assessed talent. Doe Aff. ¶¶ 4-5.

---

[1] Affidavits and declarations lacking docket references were submitted for the Court's *in camera* review.

The parties dispute the nature and extent of Doe's communications with Target's in-house and outside counsel regarding attorney-client privileged matters. Doe states that she is "familiar with legal issues that can arise in employment matters," but her "job did not require [her] to have an understanding of the law," and she "never had reason to seek legal advice from any lawyer." Id. ¶ 29.

Conversely, Joseph G. Schmitt ("Schmitt"), an attorney with the law firm of Nilan Johnson Lewis PA (the "Nilan firm"), Target's outside counsel, avers that from September 2006 to November 30, 2009, he and members of Target's outside and in-house counsel communicated on "at least 194 separate instances . . . with [Doe] for the purposes of obtaining information, providing legal advice, or providing direction to [Doe] and her team." Schmitt Reply Decl. ¶ 10. The communications included telephone conversations, meetings, and written communications made by Target's in-house and outside counsel in their representation of Target. Id. ¶¶ 8, 11.

C.    The Timeline

Gifford first consulted with the Halunen firm in September 2009 regarding employment discrimination and retaliation claims she was contemplating against Target. Halunen Decl. [Docket No. 28] ¶ 2; Thome Decl. [Docket No. 29] ¶ 2; Pls.' Mem. in Opp. to Def.'s Mot. to Disqualify and Dismiss [Docket No. 27] at 3. In the course of investigating Gifford's potential claims, attorney Joni Thome ("Thome") of the Halunen firm determined Gifford may also have a claim under the Fair Labor Standards Act ("FLSA") due to Target's classification of the ETL position as exempt from overtime compensation. Thome Decl. ¶ 3. From October 12, 2009 to December 4, 2009, attorneys at the Halunen firm interviewed three potential witnesses and collected documents from Gifford to further evaluate the potential FLSA claim. Id. ¶¶ 4-6.

3

After Gifford initially consulted the Halunen firm but before formally retaining the firm, Doe sent Thome an e-mail on December 5, 2009, seeking legal advice in negotiating a separation agreement with Target. Thome Decl. ¶ 8. Doe believed she was being terminated from Target because she possessed information relating to Target's possible exposure to Title VII litigation and because she had repeatedly stated to her managers and to Target's outside counsel that she believed Target was violating legal obligations under Title VII. Doe Aff. ¶ 8.

Doe met with Thome on December 10, 2009, to discuss possible claims Doe may have against Target. Id. ¶ 7; Thome Decl. ¶ 9. After signing a retainer agreement, Thome asked Doe to provide her with documents pertaining to Doe's claims against Target to facilitate an evaluation of her case and the negotiation of a severance agreement. Thome Decl. ¶ 11. There is no record of whether Thome or other counsel with the Halunen firm informed Doe at this first meeting of their investigation of a potential class action against Target or whether Doe was instructed not to divulge attorney-client privileged information to the Halunen law firm.

Doe met with Thome again on December 14, 2009, the same day she resigned from Target. Id. ¶ 12; Doe Aff. ¶¶ 2, 12. During this second meeting, Doe began to describe a conversation she had with Schmitt. Thome Decl. ¶ 12; Doe Aff. ¶ 11. Thome immediately stopped Doe from speaking and instructed her not to reveal attorney-client privileged communications between her and Target's counsel. Thome Decl. ¶ 12; Doe Aff. ¶ 11. Doe indicated she was unfamiliar with the concept of attorney-client privilege. Thome Decl. ¶ 13; Doe Aff. ¶ 11. Thome then explained the scope and nature of the privilege to Doe. Thome Decl. ¶ 12; Doe Aff. ¶ 11. Before leaving the meeting, Doe provided Thome with documents relating to her claims against Target. Thome Decl. ¶14. Thome reviewed the documents and concluded

none were privileged.  Id.

Approximately two weeks later, on December 29, 2009, Doe met with Thome a third time and delivered another set of documents.  Doe Aff. ¶ 15; Thome Decl. ¶ 17.  In reviewing the documents, Thome found one marked "Attorney-Client Privileged" and copies of e-mail messages between Doe and Schmitt.  Thome Decl. ¶ 17.  Doe provided Thome the e-mails because she "did not know which would or would not be considered to be privileged."  Doe Aff. ¶ 15.  Thome avers she did not review the content of any of the documents marked privileged or the e-mails involving Schmitt, and that those items were immediately placed in a sealed envelope.[2]  Thome Decl. ¶17.  Thome again instructed Doe not to tell her or give her privileged information.  Id.

The day following Doe's delivery of the admittedly privileged documents, the Halunen firm posted a website announcement of the firm's investigation of a potential class action against Target for the alleged misclassification of store managers and assistant managers under the FLSA.  Schmitt Decl., Ex. B.

On January 4, 2010, Thome and Clayton Halunen ("Halunen") of the Halunen firm met with Schmitt and attorney Michael Nilan of the Nilan firm to negotiate Doe's separation agreement.  Thome Decl. ¶ 20; Schmitt Decl. ¶ 12; Halunen Decl. ¶ 5.  Schmitt avers that during the discussion, Halunen mentioned an attorney-client privileged discussion which had occurred

---

[2] The record is inconsistent as to who placed the documents in the sealed envelope.  In his March 16 letter to Target's outside counsel Jeffrey D. Wohl ("Wohl"), Clayton Halunen wrote, "we had [Doe] remove . . . any documents which involved any in house or outside counsel.  These documents were then immediately placed into an envelope."  Halunen Decl., Ex. E.  However, Thome and Doe aver Thome reviewed the documents and placed those she believed may be privileged into the sealed envelope.  Thome Decl. ¶ 17; Doe Aff. ¶ 15.

at an October 2009 meeting attended by Doe, Schmitt, another attorney from the Nilan firm, and members of the Talent Assessment Team.  Schmitt Decl. ¶ 12.  At that October 2009 meeting, the group analyzed data and discussed the data's implication for how Target was selecting its Store Team Leaders ("STL").  Id. ¶ 8.  Halunen exhibited his knowledge of the October 2009 discussion by voicing his belief that the data's implications for how Target selects its STLs also raised concern for how Target classifies its store executives under the FLSA.  Id. ¶ 12.  Halunen further revealed that Doe had produced privileged documents to the Halunen firm, and that the privileged documents had been placed in a sealed envelope and were being held by the Halunen firm for *in camera* review because the documents "would likely constitute evidence of fraud." Halunen Decl. ¶ 5.  Schmitt immediately demanded return of the privileged and confidential documents in the Halunen firm's possession.  Schmitt Decl. ¶16.

The following day, Thome sent Schmitt a letter repeating Doe's potential claims against Target and urging Schmitt to present a counteroffer in the negotiation of Doe's severance. Schmitt Decl. ¶ 14, Ex. D.  Thome also enclosed a copy of an e-mail Doe sent on November 30, 2009 to her supervisor, with a courtesy copy to Target's in-house counsel, Sandy Schlafge ("Schlafge"), and another Target employee.  Id., Ex. D.  In the e-mail, Doe summarized a discussion she had with Schmitt, Schlafge, and the Talent Assessment Team.  Id.  Doe described how, during the discussion, she "surfaced" a concern regarding a legal issue and "raised that concern with [Schmitt], [Schlafge]," and the Talent Assessment Team.  Id.  Doe then discussed the responses to her concern by Schmitt, Schlafge, and the Talent Assessment Team.  Id.

On January 8, 2010, Doe again met with attorneys at the Halunen law firm.  This time,

Halunen and an associate interviewed Doe as a fact witness in Gifford's potential FLSA case.[3] Halunen Decl. ¶ 8; Doe Aff. ¶ 16. Halunen began the interview by instructing Doe not to disclose privileged information. Halunen Decl. ¶ 8; Doe Aff. ¶ 16. Doe avers the information she divulged was limited to how Target evaluates the ETL position and the names of individuals who would have additional information about how ETLs are assessed. Doe Aff. ¶ 16. Doe states she did not provide information that was "subject to the attorney-client privilege." Id. Similarly, Halunen asserts that Doe "never told [the Halunen firm] about any information she may have learned from working with Target Corporation's lawyers. She only provided information based upon her day-to-day job duties . . . . " Halunen Decl. ¶ 10.

On January 21, 2010, Gifford formally retained the Halunen firm. Pls.' Mem. in Opp. to Def.'s Mot. to Disqualify and Dismiss at 4.

On February 4, 2010, Target's outside counsel Jeffrey Wohl ("Wohl") wrote to Halunen demanding the return of any privileged information. Wohl Decl. ¶ 4, Ex. A. Wohl warned that if the Halunen firm filed suit under the FLSA, Target would move to disqualify counsel and dismiss the case based on the Halunen firm's receipt of Target's privileged and confidential business information. Id.

That same day, Doe brought all Target documents remaining in her possession to the Halunen firm for return to Target, having reached a settlement agreement in her severance negotiations on January 26, 2010. Doe Aff. ¶¶ 18-19. Thome and a paralegal reviewed the documents to ensure they did not include correspondence between Doe and Thome during Doe's representation by the Halunen firm. Id. ¶19; Thome Decl. ¶ 25. Thome asserts her review was

_____

[3] At this time, the Halunen firm had not yet agreed to represent Gifford.

"perfunctory" and "consisted of looking at the 'To' and 'From' parts of email messages and for documents marked as privileged." Thome Decl. ¶ 25. She found several documents she suspected were privileged, and placed them into a sealed envelope. Id. Thome then delivered to Target all documents the Halunen firm had obtained in the course of representing Doe. Id. ¶ 27; Schmitt Decl. ¶¶ 16-17. The returned materials included sealed envelopes containing documents the Halunen firm believed to be privileged, as well as unsealed documents. Thome Decl. ¶ 26; Schmitt Decl. ¶ 17. Schmitt avers that among the documents returned to Target, "a substantial amount of Target's attorney-client privileged and confidential business information was not sealed." Schmitt Dec. ¶ 17, Exs. F-H.

On February 23, 2010, Halunen sent Target's counsel a letter captioned "*In re: Target ETL FLSA Wage and Hour Litigation*." Schmitt Decl. ¶ 18, Ex. I. The letter discussed Target's obligation to preserve documents and electronically stored information, and requested the production of certain documents for Plaintiffs' pre-litigation investigation. Id., Ex. I. Target's counsel contends the document request identifies categories of documents and information of which Halunen could not have known absent Doe's improper disclosure of protected Target information. Id. ¶ 18.

Halunen avers that on March 16, 2010, he sent a letter to the Minnesota Lawyers Professional Responsibility Board (the "Board") requesting an advisory opinion regarding his firm's contacts with Doe. Halunen Decl. ¶¶ 18-19, Ex. C. The next day, a Board attorney telephoned Halunen and conveyed the opinion that, based on the facts provided, no ethical

violation would result if the Halunen firm were to file an action asserting Plaintiffs' claims.[4] Id. ¶ 20.  The Court was not provided with a copy of Halunen's letter to the Board, nor any written documentation of the Board's telephonic response.

Gifford filed this class action[5] on April 7, 2010.  Compl. [Docket No. 1] at 22.  Eight days later, Target filed its Motion to Disqualify and Dismiss.

## III.  DISCUSSION

### A.  Disqualification

#### 1.  Legal Standard

Attorney disqualification is committed to the discretion of the court.  Jenkins v. State of Missouri, 931 F.2d 470, 484 (8th Cir. 1991).  "Disqualification is an ethical, not a legal matter, and is in the public's, as well as the client's, interest."  In re Potash Antitrust Litig., Civ. No. 3-93-197, 1993 WL 543013, at *16 (D. Minn. Dec. 8, 1993), amended 1994 WL 2255 (D. Minn. Jan. 4, 1994).  "Disqualification is appropriate where an attorney's conduct threatens to work a continuing taint on the litigation and trial."  Arnold v. Cargill, Inc., Civ. No. 01-2086, 2004 WL 2203410, at *5 (D. Minn. Sept. 24, 2004).

In determining whether to disqualify counsel, a court balances the interests and

---

[4] The telephonic advisory opinion Halunen received from the Board is not binding on this Court.  See In re Admonition Issued in Panel File No. 99-42, 621 N.W.2d 240, 244-45 (Minn. 2001) (holding that advisory opinions of the Minnesota Lawyers Professional Responsibility Board are not binding).

[5] The Complaint and Amended Complaint allege Target misclassifies the ETL position as exempt from overtime compensation required by state and federal labor laws.  Compl. ¶ 28; Am. Compl. ¶ 35.  A related class action, also filed by the Halunen firm, alleges Target misclassifies the STL position as well.  See Stroud v. Target Corp., Civil No. 10-1583 (ADM/RLE) (D. Minn.), Compl. [Docket No. 1] at ¶ 31.

motivations of the attorneys, the clients, and the public.  Marvin Lumber & Cedar Co. v. Norton Co., 113 F.R.D. 588, 592 (D. Minn. 1986); Arnold, 2004 WL 2203410, at *13.  Factors to be considered include a court's "duty to maintain public confidence in the legal profession and its duty to insure the integrity of the judicial proceedings."  Potash, 1993 WL 543013, at *16 (citing United States v. Agosto, 675 F.2d 965, 969 (8th Cir. 1982)).  Courts also take into account a party's "interest in a trial free from even the *risk* that confidential information has been unfairly used against it," Arnold, 2004 WL 2203410, at *5, as well as the "important public right" of a party to select its own counsel,  Macheca Transport Co. v. Philadelphia Indemnity Insurance Co., 463 F.3d 827, 833 (8th Cir. 2006).

Motions to disqualify are "subjected to particularly strict scrutiny" because of their potential for abuse by opposing counsel.  Olson v. Snap Prods., Inc., 183 F.R.D. 539, 541-42 (D. Minn. 1998).  However, "any legitimate doubts . . . must be resolved in favor of disqualification."  Id. at 542 (citing Coffelt v. Shell, 577 F.2d 30, 32 (8th Cir. 1978)).

The conduct of attorneys practicing in the District of Minnesota is governed by the Minnesota Rules of Professional Conduct.  D. Minn. L.R. 83.6(d).  The rules do not expressly prohibit a lawyer from having contact with former managerial employees of an adverse party, even if the contact is made without the consent of the organization's counsel.  CarboMedics, Inc. v. ATS Med., Inc., Civ. No. 06-4601, 2008 WL 5500760, at *5-6 (D. Minn. April 16, 2008) (citing Minn. R. Prof. Conduct 4.2, Comment 7).  However, a lawyer having contact with an organization's former employees must not infringe on the organization's legal rights.  Minn. R. Prof. Conduct 4.4 (stating that "[i]n representing a client, a lawyer shall not . . . use methods of obtaining evidence that violate the legal rights of [a third party]"); see also Minn. R. Prof.

Conduct 4.2, Comment 7; <u>CarboMedics</u>, 2008 WL 5500760, at *6.  Such rights include the right

not to have privileged and confidential information disclosed.  <u>See</u> <u>Arnold</u>, 2004 WL 2203410, at

*7 (recognizing a corporation's legal "rights to confidentiality and privilege").  Thus, the

"pivotal question in evaluating [an attorney's] contacts with [an organization's] former

employees, is the likelihood any information gathered by [the attorney] actually intruded upon

any legally privileged matters." <u>Snap Prods.</u>, 183 F.R.D. at 545.

Disqualification is not warranted where an attorney's conduct is not likely to have

elicited privileged information.  <u>See</u> <u>id.</u>  <u>Snap Products</u>, a products liability case, involved

contact by the plaintiff's attorney with two of the defendant's former managerial employees.  <u>Id.</u>

at 541.  The plaintiff's attorney interviewed the former employees about the evolution, design,

and testing of an allegedly defective tire inflator.  <u>Id.</u>  The interviews did not probe into the

former employees' communications with the defendant's attorneys.  <u>Id.</u>  Because counsel

informed the former employees that he represented the plaintiff and did not ask them to discuss

matters that were privileged, the court found the rules of professional conduct and their

underlying policies were not violated and disqualification was not warranted.  <u>Id.</u> at 545.  The

court emphasized, however, that

> an attorney's discussions with former members of an organizational
> party-opponent's management could intrude upon privileged matters,
> which would not be permissible under Rule 4.2.  When viewed in the
> context of the potential sanctions for such an intrusion, we think
> caution suggests deliberate avoidance of even the appearance of
> unprofessionalism.

<u>Id.</u>

Attorneys in this district have been disqualified when they knowingly affiliated with high

level former employees or corporate counsel who regularly interacted with the adverse party's

counsel during the scope of employment and there was a strong likelihood that privileged and confidential information was disclosed. <u>Arnold</u>, 2004 WL 2203410, at *8; <u>Potash</u>, 1993 WL 543013, at *16.

For example, the plaintiffs' attorney in <u>Arnold</u> initiated a relationship with a former Cargill human resources executive who, by virtue of his former position at Cargill, "possessed information that was privileged and confidential to Cargill and had knowledge of Cargill's litigation theory." <u>Arnold</u>, 2004 WL 2203410, at *1. At the request of the plaintiffs' counsel, the former Cargill executive produced two thousand pages of documents, including documents marked "Privileged and Confidential" or appearing to be to or from Cargill's counsel. <u>Id.</u> at *2-3. The plaintiffs' counsel segregated the documents appearing to be privileged and represented to the court that the documents were not reviewed by counsel except to note the dates and the "designation or the indication on the face of the document that legal counsel authored or received the document." <u>Id.</u> at *3. The plaintiffs' counsel intended to return the privileged documents to the former executive, but instead inadvertently retained them for over eighteen months until a member of the firm rediscovered them and forwarded them to Cargill. <u>Id.</u> at *4.

Judge Donovan Frank, in disqualifying counsel in <u>Arnold</u>, found it significant that the plaintiffs' counsel knew the former Cargill executive had been "extensively exposed to confidential and privileged information, including information learned through regular contact with Cargill's in-house and outside legal teams," and that the plaintiffs' counsel made "no meaningful effort to protect Cargill's confidences." <u>Id.</u> at *8. As a result, the plaintiffs' counsel "eventually came into possession of documents marked privileged and confidential." <u>Id.</u> Additionally, the plaintiffs' attorneys were under an ethical duty to "cease review of the

documents, notify the privilege holder, and return the documents." Id. By conducting their own privilege review and then retaining the documents, the plaintiffs' counsel "recklessly disregarded the risks associated with playing fast and loose with the rules protecting against disclosure of privileged and confidential material." Id. at *10. Because the review and retention of the privileged documents tainted the proceedings and led to "the 'risk' that improperly obtained confidential and privileged information might be used against Cargill," the plaintiffs' counsel was disqualified. Id. at *13.

The plaintiffs' counsel in Potash was disqualified for paying a former in-house attorney of one of the defendants to provide confidential information relating to the plaintiffs' antitrust claim. Judge Richard Kyle found that by knowingly affiliating themselves with the defendant's former attorney, the plaintiffs' counsel had "created a risk that confidential information would be disclosed." Potash, 1993 WL 543013, at *16. The court further determined that the plaintiffs' attorneys who received confidential information were unable to "remove from their cognition or strategy the information . . . wrongfully communicated to them," and the benefits they derived from their relationship with the defendant's former counsel would "continue to provide [the plaintiff's] counsel with an unfair advantage and taint [the] proceedings." Id. Accordingly, the law firms whose attorneys had direct contact with the defendant's former attorney were disqualified. Id. at *16.

## 2. Analysis

In the instant caste, the circumstances warrant disqualification because conduct has occurred that taints these proceedings and, if left unremedied, potentially undermines public confidence in the legal profession.

There is a strong likelihood that the Halunen firm's repeated contacts with Doe intruded upon Target's right to confidentiality and privilege. As in <u>Potash</u> and <u>Arnold</u>, the circumstances involve a high-level[6] employee who had significant exposure to the adverse party's privileged information. In fact, while <u>Potash</u> and <u>Arnold</u> involved contact with an organization's *former* constituents, the Halunen firm's first consultation with Doe on December 10, 2009 occurred while she was still employed by Target, a fact which should have waved an immediate cautionary flag. Like the executive in <u>Arnold</u>, Doe had no formal legal training, and "was not in a position to determine what . . . information was discloseable and what was not discloseable without assistance of counsel. Thus, it is conceivable, if not likely, that privileged and confidential information was disclosed by [Doe] in conversation, even if unconsciously." <u>Arnold</u>, 2004 WL 2203410, at *8; <u>see also</u> <u>Biocore Med. Techs., Inc. v. Khosrowshahi</u>, 181 F.R.D. 660, 674 (D. Kan. 1998) (finding a "reasonable possibility" that a former employee who had exposure to the confidential information of her former employer may have improperly disclosed the information).

Indeed, there is no dispute that the Halunen firm's repeated contacts with Doe did in fact elicit privileged documents that were reviewed in at least a "perfunctory" fashion by counsel at the Halunen firm on December 29, 2009, and February 4, 2010.[7] Instead of ceasing its review,

---

[6] At oral argument, Halunen attempted to portray Doe as a low-level employee, but her professional qualification as a licensed psychologist, job duties, and position as a senior manager in human resources at Target do not support this argument.

[7] Target did not initially challenge Halunen's assertion that neither he nor anyone else at the firm reviewed the contents of the sealed envelope. Def.'s Mem. in Supp. of Mot. to Disqualify and Dismiss at 2, n.2. However, Thome's declaration describing privilege reviews of Target documents on December 29, 2009, and February 4, 2010, now places those documents at issue. <u>See</u> Def.'s Reply Mem. [Docket No. 48] at 10-13.

immediately informing Target it was in possession of the privileged documents, and returning

the documents, the Halunen firm held some of the documents for more than a month, despite

Target's timely demand for their return. By conducting the privilege review and retaining

Target's privileged documents, the Halunen firm "risked creating the appearance of impropriety

" and now "asks this Court, the parties, and the public to ignore the appearance of impropriety

and simply trust that upon conducting its own privilege review of [Target's] documents, [the

Halunen firm] did not substantively review the documents." Arnold, 2004 WL 2203410, at *10.

     Although the Court is inclined to accept the Halunen firm's assurances that the

documents in the sealed envelope were not substantively reviewed and that their production did

not intrude on Target's privileged matters, Doe disclosed at least two attorney-client

communications that the Halunen firm reviewed and evaluated; namely, (1) the conversation

from the October 2009 meeting in which Doe discussed the STL classification theory with

Schmitt, and (2) Doe's November 30, 2009 e-mail describing counsel's reaction to a legal issue

raised by Doe.

     Contrary to the Halunen firm's position that these communications are not privileged, the

test for privilege is clearly met. In the Eighth Circuit,

> the attorney-client privilege is applicable to an employee's
> communication if (1) the communication was made for the purpose
> of securing legal advice; (2) the employee making the communication
> did so at the direction of his [or her] corporate superior; (3) the
> superior made the request so that the corporation could secure legal
> advice; (4) the subject matter of the communication is within the
> scope of the employee's corporate duties; and (5) the communication
> is not disseminated beyond those persons who, because of the
> corporate structure, need to know its contents.

Diversified Indus., Inc. v. Meredith, 572 F.2d 596, 609 (8th Cir. 1977) (en banc). The discussion

at the October 2009 meeting is privileged because Doe and select members of the Talent Assessment Team were communicating with Target's attorneys to solicit their legal analysis, strategy, and advice concerning certain data. The November 30, 2009 e-mail from Doe to her supervisor and Target's in-house counsel also is privileged because Doe, pursuant to her supervisors' direction,[8] included counsel on a communication relating to a matter affecting the scope of Doe's duties, and requested the recipients' thoughts, including those of in-house counsel. The November 30, 2009 e-mail is also privileged because it describes the content of a privileged discussion Doe had had with Schmitt, Schlafge, and other members of Doe's team regarding legal analysis and strategy.

Unlike the situation in Arnold and Potash, the Halunen firm did not seek out Doe; rather, she initiated the relationship. Additionally, the plaintiffs' counsel in Arnold and Potash did not attempt to protect the defendants' privileged and confidential matters, while the Halunen firm cautioned Doe not to divulge attorney-client information. However, these factual distinctions do not alter the conclusion reached when evaluating the "pivotal question" of "the likelihood that any information gathered by [the Halunen firm] actually intruded upon any legally privileged matters." Snap Prods., 183 F.R.D. at 545. As in Arnold and Potash, the inevitable conclusion is that the information gathered almost certainly intruded upon legally privileged matters.

Furthermore, while the Halunen firm's conduct does not amount to an egregious violation present in some other attorney disqualification cases, its actions closely approach if not cross

---

[8]    Doe was instructed to include Target counsel on all correspondence relating to the matter discussed in her e-mail. Doe Aff. at ¶ 45. Doe states the e-mail was sent to in-house counsel "for informational purposes only," id., but Doe also requests the e-mail's recipients, one of which is in-house counsel, to respond to Doe with their thoughts. See Schmitt Decl., Ex. D.

ethical boundaries. For example, knowing that Doe was a high-level Target employee who had been heavily exposed to privileged information, the Halunen firm interviewed her regarding this putative collective action, a purpose completely separate from that for which she had approached and retained the firm. Moreover, the firm continued the relationship even after Doe, having been cautioned multiple times on the concept of attorney-client privilege, produced privileged documents. Doe's privileged document production should have alerted the Halunen attorneys that either (1) the firm's instructions regarding privilege were inadequate to protect Target's privileged information, or (2) Doe's unfamiliarity with or disregard of the attorney-client privilege was likely to violate Target's rights not to have its protected information disclosed. By continuing these interactions, the Halunen firm "disregarded the risks associated with playing fast and loose with the rules protecting against the disclosure of privileged and confidential material." Arnold, 2004 WL 2203410, at *10; see also Potash, 1993 WL 543013, at *16 (noting the risk created when counsel knowingly associated with a holder of confidential information).

The Halunen firm's interactions with Doe and the resulting disclosures raise serious doubts as to whether this case can proceed without the threat of "a continuing taint on the litigation and trial." Arnold, 2004 WL 2203410, at *5. Given the Court's duty to uphold the integrity of the judicial process and maintain the public's confidence in the legal system, see Agosto, 675 F.2d at 969, these doubts "must be resolved in favor of disqualification." Snap Prods., 183 F.R.D. at 542.

The disclosures elicited from Doe have the potential of undermining the integrity of the judicial process. At oral argument, Halunen argued the information disclosed by Doe is unrelated to the present action. However, Halunen's own statements at the January 4, 2010

meeting with Target's counsel belie his insistence that the information is unrelated. At that meeting, he drew a connection between the October 2009 conversation between Doe and Schmitt concerning the data underlying Target's STL selection process and the manner in which Target classifies its store executives under the FLSA. Moreover, Halunen's February 23, 2010 document request identifies categories of documents and information which he presumably believed to be relevant to this action and arguably includes items which could not have been known absent Doe's disclosure of privileged information. Thus, the document request tends to cast doubt on the position that Doe's disclosures bear no relationship to the present action. The extent of the taint cannot be fully ascertained,[9] and "the dynamics of litigation are far too subtle, the attorney's role in that process is far too critical, and the public's interest in the outcome is far too great to leave room for even the slightest doubt concerning the ethical propriety of a lawyer's representation in a given case." Maldonado v. New Jersey, 225 F.R.D. 120, 141 (D.N.J. 2004). Target has an "interest in a trial free from even the *risk* that confidential information has been unfairly used against it." Arnold, 2004 WL 2203410, at *5. Accordingly, "disqualification is required in order to innoculate the litigation against a continuing taint." Potash, 1993 WL 543013, at *17.

The Halunen firm's relationship with Doe is subject to the appearance of impropriety which, if allowed to persist will erode public confidence in the legal system. The Halunen firm continued its relationship with Doe and even expanded it to include matters related to this

---

[9] Target counsel attempted to depose Doe concerning her interactions and discussions with the Halunen firm but was unable to do so because when the parties arrived at the scheduled deposition, Halunen objected to the videotaping of the deposition and refused to allow Doe to be deposed. Def.'s Mem. of Law in Supp. of Mot. to Strike [Docket No. 47] at 10.

lawsuit, despite Doe's disclosures of privileged information and Target's counsel's warnings that Doe had divulged attorney-client privileged conversations. Four days after having been warned by Target's counsel that Doe was disclosing protected information, the Halunen firm proceeded to interview her as a potential witness in this action. In doing so, the Halunen firm chose to continue to expose itself to a risk that privileged information might be revealed. The Halunen firm's review, however perfunctory, of Target's privileged documents, as well as its retention of the documents and refusal to return them despite Target's counsel's demand, increases the appearance of impropriety.

The timeline of events in this case is also circumstantial evidence of impropriety. Although the Halunen firm first met with Gifford in September 2009 and investigated her potential claims during October and November, they did not agree to represent her until late January 2010, after the Halunen firm's relationship with Doe had begun and after Target's privileged and confidential information had been disclosed. Similarly, the Halunen firm's website soliciting clients for litigation regarding Target's potential misclassification of store executives was posted more than a month after its consultations with Gifford, yet only a day after Doe met with the Halunen firm a third time and delivered documents including attorney-client privileged information.

The Court fully recognizes Plaintiffs' important public right to select counsel of their choice. This factor, however, is outweighed by the countervailing considerations of public trust and integrity of the judicial process. "[P]reservation of the public trust both in the scrupulous administration of justice and the integrity of the bar is paramount." Arnold, 2004 WL 2203410, at *14. Thus, a party's right to counsel of his or her choice "must yield to . . . ethical

considerations . . . which implicate the integrity of the judicial process.  Id.

The decision to disqualify the Halunen firm is not made lightly nor savored by this Court. However, the Halunen firm pushed ethical boundaries when it chose to represent Doe while simultaneously investigating this lawsuit, and further tested the line when it solicited Doe's knowledge concerning this action despite her former position with Target and her apparent unfamiliarity with or disregard for attorney-client privilege.  A more prudent, albeit less lucrative, course of action would have been to refer Doe to other counsel rather than risk tainting the Halunen firm's involvement in this larger lawsuit.

Target also seeks disqualification of the Halunen firm's co-counsel, Levin Fishbein Sedran & Berman (the "Levin firm").  Where knowledge gained by counsel through disclosures of protected information will lead to an improper benefit, disqualification is required to protect the judicial process and the interests of the former client.  See Potash, 1993 WL 543013, at *17. However, "it would be improper to disqualify any Plaintiffs' counsel [who] have not been shown to have had any direct or indirect contact" with a person who has divulged protected information or the materials that were improperly disclosed.  Id.  The record lacks evidence that the Levin firm has knowledge of the protected communications and documents Doe provided to the Halunen firm.  Nevertheless, it is conceivable that the Levin firm became aware of the privileged information Doe disclosed.  Therefore, the Levin firm is required to file an affidavit describing its contact, if any, with Doe, its exposure to materials Doe provided to the Halunen firm, and its communications with the Halunen firm or others concerning disclosures made by Doe.

**B.  Dismissal**

Target also seeks to dismiss this action based on the Halunen firm's receipt of Target's

privileged and confidential information. Dismissal serves as a remedy where a complaint is tainted with information that was unethically obtained. <u>Potash</u>, 1993 WL 543013, at *18 (dismissing complaint because it stated certain factual allegations that could not have made been absent disclosure of confidential information); <u>see</u> <u>also</u> <u>Snap Prods,</u>, 183 F.R.D. at 541 (listing dismissal as a remedy for attorney misconduct). However, disqualification of counsel will not automatically warrant dismissal of an action. <u>See</u> <u>Arnold</u>, 2004 WL 2203410, at *14 (disqualifying plaintiff's attorney but denying motion to dismiss class action). Target does not identify what, if any, portions of the Amended Complaint are tainted with unethically obtained information. Therefore, Target's Motion is denied to the extent it seeks dismissal of the entire Amended Complaint.

## IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED**:

1.      Defendant's Motion to Disqualify and Dismiss Counsel [Docket No. 6] is **GRANTED** to the extent it seeks to disqualify the Halunen firm and **DENIED** to the extent it seeks to dismiss this action;

2.      Within ten (10) days of the date of this Order, Plaintiffs' co-counsel Levin Fishbein Sedran & Berman shall file an affidavit stating the Levin firm's

(a) contact, direct or indirect, with Jane Doe;

(b) exposure, direct or indirect, to any materials or documents containing or describing disclosures made by Jane Doe; and

(c) discussions or written communication with any person, including

21

counsel at the Halunen firm, concerning any of Jane Doe's disclosures;[10]

3.    Defendant's Motion to Strike [Docket No. 45], Plaintiffs' Amended Motion for Rule 11 Sanctions [Docket No. 54], and Plaintiffs' Motion to Strike [Docket No. 66] are **DENIED** pursuant to the Court's June 18, 2010 oral ruling.


BY THE COURT:


_____s/Ann D. Montgomery_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  July 13, 2010.

---

[10] Failure to timely file an affidavit complying with these requirements will result in dismissal of the case without prejudice.